**YEROUSHALMI LAW**
Ben Yeroushalmi (SBN 232540)
Tanaz Rostami (SBN 253184)
Preston Kim (SBN 322540)
9100 Wilshire Blvd., Suite 240W
Beverly Hills, CA 90212
Tel: 310-623-1926
Fax: 310-623-1930

Attorneys for Creditor

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br>NAJEH SHALABI,<br>Debtor. | CASE NO. 6:26-bk-11624-SY<br><br>CHAPTER: SEVEN |
| MARIE GALAZ, Individually and as Heir of and Successor-in-Interest to XAVIER GALAZ, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>ELIAA LLC dba A & J RESIDENTIAL, NAJEH SHALABI, CARLOS XAVIER GALAZ, and DOES 1 through 75, inclusive,<br><br>Defendants. | ADV. No.: ___________________________<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §§ 523(a)(6) and/or 11 U.S.C. § 523(a)(19)(B)**<br><br>(Hearing date to be set by summons)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MARIE GALAZ, Individually and as Heir of and Successor-in-Interest to XAVIER GALAZ, deceased ("Plaintiff"), based on information and belief and the investigation of counsel, except for information based on personal knowledge, hereby alleges as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court, Central District of California has jurisdiction over the present adversary proceeding pursuant to 28 U.S.C. § 1334, which confers jurisdiction upon federal bankruptcy courts over all cases arising under Title 11, as well as all civil proceedings arising in or related to cases under Title 11 of the United States Code. This Court holds jurisdiction over the Counties of Los Angeles, Orange, Riverside, San Bernardino, Santa Barbara, Venture, and San Luis Obispo for matters pertaining to bankruptcy; this present matter having arisen and occurred in the County of Riverside, the associated Civil Complaint having been filed in the County of Riverside, and the present matter being a matter of Chapter 7 bankruptcy, the United States Bankruptcy Court, Central District of California therefore has jurisdiction over this present bankruptcy matter (28 U.S. Code § 1334). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), as it involves a determination of the dischargeability of a particular debt.
2. On March 6, 2026 (the "Petition Date"), Debtor NAJEH SHALABI ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court, commencing the underlying bankruptcy case assigned Case No. 6:26-bk-11624-SY.
3. Venue is proper in the Central District of California under **28 U.S.C. § 1409(a)** because this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this District. Debtor's place of residence is located within San Bernardino County, and the incidents which are the subject of the Civil Complaint occurred within San Bernardino County and Riverside County, both of which are included within the Central District of California.

## PARTIES

4. Plaintiff/Creditor MARIE GALAZ is an individual residing in San Bernardino County, California, at all relevant times. She brings this action individually and as Heir of and Successor-in-Interest to her late father, XAVIER GALAZ, deceased. Marie Galaz is a creditor in the above-captioned bankruptcy case, seeking to collect damages from Debtor NAJEH SHALABI arising from claims of: (1) Elder Neglect; (2) Willful Misconduct; (3) Negligence; and (4) Wrongful Death, as more fully described in Civil Case No. CVRI2407034, filed December 13, 2024, in the Superior Court of California, County of Riverside.
5. Plaintiff/Decedent XAVIER GALAZ was an individual residing in San Bernardino County, California, at all relevant times. He lived in Defendant/Debtor NAJEH SHALABI's unlicensed elderly care facility, "A & J RESIDENTIAL", located at different times at both 18557 Arrowhead Blvd, San Bernardino, CA 92407 and 15406 Orchid Street, Fontana, CA 92335. He passed away on July 17, 2024 due to injuries sustained at Debtor's care facility.
6. Defendant/Debtor NAJEH SHALABI is a resident of San Bernardino County, CA, and has variously listed the following two addresses as his home address: 1) 15406 Orchid Street, Fontana, CA 92335; and 2) 8185 Banana Avenue, #17, Fontana, CA 92335. The former was listed as his address on the Notice of Chapter 7 Bankruptcy that was served on Plaintiffs, while the latter is the home address provided to Plaintiffs in Defendant's Responses to Plaintiff's Form Interrogatories, Set One. Defendant Shalabi is the Debtor in the above-captioned Chapter 7 bankruptcy case.

## STATEMENT OF FACTS

7. XAVIER GALAZ ("Mr. GALAZ") first entered one of the several locations of A & J RESIDENTIAL, located at 18557 Arrowhead Blvd., San Bernardino, CA 92407, on or around August 22, 2019. XAVIER was seventy-one (71) years old at the time of this first admission, and was at all relevant times, an "elder" as defined in Welfare and Institutions Code § 15610.27.
8. As known by Defendants at the time, Mr. GALAZ was discharged to A & J RESIDENTIAL following a hospitalization at Pacific Grove Hospital for a worsening of his manic depression triggered by the impending death of his wife due to cancer. Upon admission to Pacific Grove Hospital, Mr. GALAZ was

noted with preexisting conditions of GERD, edema, diabetes mellitus type 2, hypertension, hypercholesterolemia, hyperlipidemia, a heart murmur diagnosed in 2015, and anemia. The purpose of his hospitalization at this time was due to his declining mental health. Mr. GALAZ stayed at A & J RESIDENTIAL for approximately two days in August 2019, at which point he contacted his daughter, Marie Galaz, expressing a desire to leave. Marie took him to her home, where he lived for about a year while continuing to experience manic depressive episodes that were increasingly difficult for Marie and her family to manage.

9. On or around August 31, 2020, Marie placed Mr. GALAZ back at A & J RESIDENTIAL after receiving a call from the facility owner, Defendant NAJEH SHALABI ("Defendant SHALABI"), offering a bed at the facility. Seeking a placement for Mr. GALAZ, Marie agreed to re-admit him to A & J RESIDENTIAL.

10. The A & J RESIDENTIAL location on Arrowhead Blvd. operated as an unlicensed independent living facility. However, its owner, Defendant SHALABI also operated a licensed facility, "A & J Residential Care Facility," located at 1229 Kelley Ave., Corona, CA 92882, under facility number 331880906.

11. Based on its own records, Defendants knew of Mr. GALAZ's vulnerable condition, and the fact that he required assistance with facets of daily living which an otherwise able-bodied adult could provide for themselves, including but not limited to, ongoing supervision and assistance. In fact, it was for these reasons that Mr. GALAZ was admitted as a resident to Defendants' facility – specifically, for care, treatment, and supervision in light of his then-existing mental and physical condition. Defendants knew that Mr. GALAZ was unable to provide himself the care and treatment necessary to protect himself against preventable injuries, specifically with regard safety and supervision. Accordingly, Defendants were responsible for providing a number of services to Mr. GALAZ as a resident of their facility – specifically, ongoing care and supervision, monitoring and observation for changes in physical, mental, emotion and social understanding, assistance with bathing, dressing, toileting, grooming, eating, and medical transportation, as well as the provision of meals and hygiene items, laundry, room cleaning, and transportation.

12. During his residency, Mr. GALAZ was under the care and supervision of Defendants, who had a duty to provide a safe environment and ensure his well-being. Defendants had a duty to provide Mr.

GALAZ with a safe and secure living environment, adequate supervision, and protection from harm. Defendants were responsible for implementing appropriate safety measures, monitoring his well-being, and maintaining his dignity and quality of life.

13. Despite these obligations, Defendants intentionally abandoned Mr. GALAZ and left him unsupervised for extended periods of time without monitoring or assistance. Defendants knowingly failed to uphold their duty of care, resulting in severe and preventable harm to Mr. GALAZ. This was a direct result of Defendants' intentional decision to staff their facility with an insufficient number of care personnel, both in terms of number and in training. As illustrated above, Defendants intentionally understaffed their facility in order to increase profits at the expense of patient care, which directly led to the lack of supervision, monitoring, and assistance that Mr. GALAZ suffered. This lack of supervision is a direct violation of the facility's duty to monitor and protect vulnerable residents. By neglecting to perform routine checks, monitoring Mr. GALAZ's overall condition, and ensure Mr. GALAZ'S safety, Defendants created an environment where he was left vulnerable to injury and harm.

14. Mr. GALAZ lived at A & J RESIDENTIAL on Arrowhead Blvd. for about four years. However, in June 2024, Defendant SHALABI moved Mr. GALAZ from the A & J RESIDENTIAL facility located at 18557 Arrowhead Blvd, San Bernardino, CA 92407 to a different location of A & J RESIDENTIAL located at 15406 Orchid Street, Fontana, CA 92335, without notifying Mr. GALAZ'S daughter, informant, and responsible party, Marie Galaz. When Marie visited Mr. GALAZ in May 2024, she visited him at the Arrowhead Blvd. location. One day, when she came to visit sometime in May or June of 2024, Defendant SHALABI told her that he had moved all the residents, including Mr. GALAZ, to the Orchid Street location. Marie asked Defendant SHALABI why he had never notified her or gained her permission to do so, and he responded that he thought he had told her. She then went to visit her father at the Orchid Street location. Marie visited Mr. GALAZ at the Orchid Street location three times during June 2024. Then, Marie got pneumonia and was unable to visit Mr. GALAZ.

15. On around July 4, 2024, Marie received a call from Kaiser Permanente Fontana Medical Center notifying her that her father was in the hospital; the hospital staff stated he had a fever but did not note any other injuries. The hospital was not aware where Mr. GALAZ had been prior to being transferred to the hospital. The doctors told Marie that Mr. GALAZ had suffered from elder abuse.

16. Upon admission to Kaiser Permanente Fontana Medical Center on July 4, 2024, Mr. GALAZ was diagnosed with severe sepsis with acute organ dysfunction, right hand cellulitis (primary), right arm cellulitis, acute coronary syndrome, unspecified, endocarditis, coronary artery disease without angina, and DM 2. In Mr. GALAZ'S physical exam on admission, he was noted with "Severe subcutaneous edema and swelling throughout the right hand and wrist with areas of minimal air in the subcutaneous soft tissues could be secondary to necrotizing fasciitis most marked at dorsal aspect metacarpophalangeal joints, hand and wrist." An RN who charted on him on July 4 described his right forearm as "red and hot" and his right hand: "swollen, blisters, weeping, open skin". Emergency Department notes from July 4 state that Mr. GALAZ was noted with "severe [right upper extremity] cellulitis on exam" and that he "met the severe sepsis criteria in the ER based on elevated heart rate, respiratory rate, and INR with a clear source of infection". He was also noted with "pressure ulcer of back stage 1", "pressure ulcer of sacrum stage 1", "ulcer of left heel, unspecified depth", "ulcer of right heel, unspecified depth", and "incidental finding of T10 and L1 fracture" upon admission. The chest x-ray upon admission was negative for pneumonia. The below photographs were taken on July 4, 2024, when Mr. GALAZ was admitted to Kaiser Permanente Fontana Medical Center:



7/4 R hand cellulitis



7/4 Bilateral heel ulcers



7/4 Bilateral back ulcers

17. Labs run on July 4, 2024, revealed that Mr. GALAZ had a white blood cell count of 29.4, indicating an infection. A blood culture was ordered on the same date, with a preliminary result indicating “growth of Streptococcus pyogenes (Group A)”. The gram stain result indicated “aerobic and anaerobic bottles -

Gram positive cocci in pairs and chains". Group A Streptococcus is a bacterium that most commonly affects the skin and throat. Intravenous vancomycin was ordered and administered every 24 hours from July 4, 2024 until July 7, 2024, at which point the doctor ordered that it be administered every 12 hours.

18. During his hospitalization at Kaiser Permanente Fontana Medical Center on July 4, 2024, it was also discovered that Mr. GALAZ suffered from a concussion. Mr. GALAZ had a visible bruise on his head and exhibited symptoms such as going in and out of sleep. These observations further underscore the severity of the injuries and neglect Mr. Galaz experienced while under the Defendants' care.

19. On July 5, 2024, a doctor noted in Mr. GALAZ's Assessment and Plan that he was suffering from right hand cellulitis and severe sepsis with acute organ dysfunction. The doctor noted that these conditions were "from boarding care" and that their nature was "bacteremic (gram positive cocci) 2/2 right hand cellulitis 2/2 possible ruptured bullae".

20. On July 8, 2024, Marie called Defendant SHALABI to ask him about what had happened to Mr. GALAZ, at which point Defendant SHALABI told Marie he did not know what happened to Mr. GALAZ because Defendant SHALABI had been on vacation. Marie asked who had been watching Mr. GALAZ, to which Defendant SHALABI had no answer.

21. On July 9, 2024, Mr. GALAZ was transferred from Kaiser Permanente Fontana Medical Center to Rialto Post Acute Care Center. The hospital provided orders that Mr. GALAZ was to complete a "6-week course of IV Rocephin via PICC line for treatment of endocarditis" once discharged to Rialto Post Acute Care Center.

22. Mr. GALAZ was only at Rialto Post Acute Care Center for two days, until July 11, 2024, before he was transferred to Arrowhead Regional Medical Center due to requiring a higher level of care than Rialto Post Acute Care Center could provide; specifically, the reason for transfer is given as "abnormal pulse oximetry (low oxygen saturation)".

23. On July 12, 2024, Mr. GALAZ was noted to be suffering from acute encephalopathy, acute hypoxemic respiratory failure, altered mental state, heart failure, and sepsis by Arrowhead Regional Medical Center. The hospital also noted on this date that Mr. GALAZ was "admitted to telemetry medicine for sepsis likely due to osteomyelitis seen on hand x-ray" and that the sepsis was "likely 2/2 to cellulitis of

left arm". His diagnoses as of this date with respect to sepsis were updated to: "sepsis without acute organ dysfunction, due to unspecified organism" and "septic shock".

24. On July 13, 2024, Mr. GALAZ was fitted with a high-flow nasal cannula (HFNC) and started on Rocephin to treat sepsis, arm cellulitis, and a "complicated UTI". Mr. GALAZ'S daughter, Marie, affirmed that she wanted the hospital to continue to use all noninvasive measures to treat his sepsis.

25. Venous blood samples were collected from Mr. GALAZ on July 15, 2024, and the testing revealed abnormal results for procalcitonin (with a value of 28.50) and vancomycin trough (with a value of 16.8). For procalcitonin, an amount greater than 10 ng/mL indicates "important systemic inflammatory response, almost exclusively due to severe bacterial sepsis or septic shock", and for vancomycin trough, a result of 15-20 ug/mL indicates "sustained MRSA bacteremia and endocarditis or other severe invasive MRSA infections".

26. On July 16, 2024, Mr. GALAZ's oxygen level desaturated to 41% while he was on the high-flow nasal cannula 70L FiO2 70%. His oxygen was increased to 100% 70L, but his condition did not improve. Mr. GALAZ'S family confirmed that he should be transferred to comfort care at that point. His antibiotics were discontinued and morphine was administered for comfort.

27. On July 17, 2024, Mr. GALAZ passed away at Arrowhead Regional Medical Center.

28. The causes of death listed on Mr. GALAZ's death certificate are: 1) acute hypoxic respiratory failure; 2) sepsis; 3) community acquired pneumonia; and 4) diastolic heart failure.

29. Given the foregoing, Plaintiffs filed a Civil Lawsuit listing as causes of action: 1) Elder Neglect, 2) Willful Misconduct, 3) Negligence, and 4) Wrongful Death. In the course of litigation, Defendant NAJEH SHALABI filed for Chapter 7 Bankruptcy.

## CLAIMS FOR RELIEF

### CLAIM I — WILLFUL AND MALICIOUS INJURY PURSUANT TO 11 U.S.C. § 523(a)(6)

30. Pursuant to 11 U.S.C. § 523(a)(6), a discharge under Chapter 7 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

31. As alleged above, Defendant SHALABI's conduct was willful and malicious. Defendant SHALABI intentionally operated an unlicensed care facility, knowingly understaffed the facility to increase profits, and deliberately failed to provide XAVIER GALAZ with adequate supervision, monitoring, and care — despite knowing that such failures would result in serious harm to a vulnerable elder. These acts and omissions were not merely negligent; they were deliberate decisions made by Defendant SHALABI with knowledge that injury to Mr. Galaz was substantially certain to result.
32. As a direct and proximate result of Defendant SHALABI's willful and malicious conduct, XAVIER GALAZ suffered severe physical injuries, including sepsis, cellulitis, pressure ulcers, a concussion, spinal fractures, and endocarditis, ultimately leading to his death on July 17, 2024. Plaintiff has sustained and continues to sustain significant damages as a result.
33. Accordingly, the debt owed by Defendant SHALABI to Plaintiff arising from these events is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**CLAIM II — ALTERNATIVE BASIS: 11 U.S.C. § 523(a)(19)(B)**

34. Plaintiff further alleges, in the alternative, that any future judgment, settlement, consent order, or other award entered in Civil Case No. CVRI2407034 shall constitute a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(19)(B), which excepts from discharge any debt resulting from: (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; (ii) any settlement agreement entered into by the debtor; or (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.
35. Plaintiffs/Creditors MARIE GALAZ and XAVIER GALAZ make the present Adversary Proceeding Complaint on the basis of 11 U.S. Code § 523(a)(19)(B): "A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt that results, before, on, or after the date on which the petition was filed, from (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; (ii) any settlement agreement entered into by the debtor; or (iii) any court or administrative order for any

damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor".

36. Given that the civil action is pending and that the damages sustained by Plaintiff were proximally caused by Debtor SHALABI's conduct, Plaintiff reserves all rights to assert the foregoing basis upon entry of any applicable judgment or order.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MARIE GALAZ, individually and as Heir of and Successor-in-Interest to XAVIER GALAZ, prays for judgment against Defendant/Debtor NAJEH SHALABI as follows:

37. For a determination and declaration that the debt owed by Debtor NAJEH SHALABI to Plaintiff arising from the events described herein is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(6) and/or 523(a)(19)(B);
38. For an order confirming that Debtor shall not be permitted to discharge any debt, judgment, settlement, or award owed to Plaintiff in connection with Civil Case No. CVRI2407034;
39. For attorney's fees and costs to the extent permitted by law; and
40. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all issues triable by jury.

Respectfully submitted,

Dated: June 4, 2026

YEROUSHALMI & YEROUSHALMI

By: ______________________

BEN YEROUSHALMI,
Attorney for Plaintiff